**1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
KEY WEST DIVISION

CASE NO.:  14-10028-CIV-MARTINEZ-GOODMAN

TREAVOR EIMERS, as Personal Representative of
the Estate of Charles Eimers, Deceased,

Plaintiff,

vs.

CITY OF KEY WEST, a Florida municipality, et al.,

Defendants.

_____/

VIDEO DEPOSITION OF NICHOLAS GALBO

Friday, November 7, 2014
10:34 a.m. - 11:29 a.m.
Law Office of Horan Wallace & Higgins, LLP
608 Whitehead Street
Key West, Florida  33040

Examination of the witness taken before:

Suzanne Ex, CVR-M, FPR
Certified Verbatim Reporter
Florida Professional Reporter

**2**

APPEARANCES

On Behalf of the Plaintiff:
HORAN WALLACE & HIGGINS, LLP
608 Whitehead Street
Key West, Florida  33040
(305) 294-4585 / Fax (305) 294-7822
dphoran@horan-wallace.com / darren@horan-wallace.com
BY:  DAVID PAUL HORRAN, ESQUIRE
BY:  DARREN M. HORAN, ESQUIRE

THE MCKEE LAW GROUP, LLC
17150 Royal Palm Boulevard, Suite 1
Weston, Florida  33327
(954) 888-9877 / (954) 217-0150
rmckee@themckeelawgroup.com
BY: ROBERT J. MCKEE, ESQUIRE

On Behalf of the Defendants:
JOHNSON ANSELMO MURDOCH BURKE PIPER & HOCHMAN, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida  33304
(954) 463-0100 / Fax (954) 463-2444
hgill@jambg.com / burke@jambg.com
BY:  HUDSON C. GILL, ESQUIRE

On Behalf of the Defendant Gary Lee Lovette:
ROBERTS REYNOLDS BEDARD & TUZZIO, PLLC
470 Columbia Drive, Building C-101
West Palm Beach, Florida  33409
(561) 688-6560 / Fax (561) 688-2343
lreynolds@rrbpa.com
BY:  LYMAN H. REYNOLDS, JR., ESQUIRE

Also Present:
RODERICK PRATT, LEGAL VIDEOGRAPHER

--oo0oo--

**3**

INDEX OF PROCEEDINGS

Page

Video Deposition of NICHOLAS GALBO
  Direct Examination by Mr. David Paul Horan . . . . . 5

Certificate of Oath . . . . . . . . . . . . . . . . . . 49
Certificate of Reporter . . . . . . . . . . . . . . . . 50
Read Letter . . . . . . . . . . . . . . . . . . . 51
Errata Sheet . . . . . . . . . . . . . . . . . . . 52

INDEX OF PLAINTIFF'S EXHIBITS
Page

No. 13   Galbo KWPD Incident Report . . . . . . . . . 10
No. 14   Lovette KWPD Incident Report . . . . . . . . 41

**4**

1   Deposition taken before Suzanne Ex, Certified Verbatim

2   Reporter, Florida Professional Reporter and Notary Public in

3   and for the State of Florida at Large in the above cause.

4        - - - - - - -

5        THE COURT REPORTER:  Good morning.  We are now on

6   the video record.  Today is Friday, November 7th, 2014,

7   at 10:34 a.m.  We're here at the Law Office of Horan

8   Wallace and Higgins, for the purpose of taking video

9   deposition of Nicholas Galbo in Case Number 14-10028-

10  CIV, Treavor Eimers vs. City of Key West, et al., U.S.

11  District Court, Southern District of Florida.  The court

12  reporter is Suzanne Ex and the videographer is Roderick

13  Pratt, both of U.S. Legal Support.

14       Would all counsel please state their appearance for

15  the record and then I will swear in the witness.

16       MR. DAVID PAUL HORAN:  David Paul Horan, Darren

17  Horan and Bob McKee for the Plaintiff Eimers.

18       MR. GILL:  Hudson Gill on behalf of Officer Galbo,

19  the City of Key West and the other individual officers,

20  with the exception of Officer Lovette.

21       MR. REYNOLDS:  Lyman Reynolds on behalf of Officer

22  Lovette.

23       THE COURT REPORTER:  Would you raise your right

24  hand, please.  Do you swear or affirm the testimony you

25  are giving in this cause will be the whole truth and

1 (Pages 1 to 4)

5

1  nothing but the truth?
2       THE WITNESS: Yes.
3  THEREUPON,
4            NICHOLAS GALBO
5  having been first duly sworn, was examined and testified as
6  follows:
7            DIRECT EXAMINATION
8  BY MR. DAVID PAUL HORAN:
9       Q.  Officer Galbo, please state your name and your
10  business address.
11      A.  Officer Nicholas Galbo, 1604 North Roosevelt
12  Boulevard, Key West, Florida, 33040.
13      Q.  It's amazing. You all live in the same place.
14          Here's what I need from you. I want to find out if
15  you've ever had your deposition taken?
16      A.  Yes.
17      Q.  When?
18      A.  Not for this case, but I've had depositions.
19      Q.  How many times?
20      A.  Several. I don't know an exact number.
21      Q.  By whom?
22      A.  Public defender, private attorneys and State
23  Attorney.
24      Q.  Who was the private attorney?
25      A.  I don't recall his name.

6

1       Q.  How long ago?
2       A.  At least a year.
3       Q.  I tend to talk fairly slow because I'm from
4  Georgia, but if you don't understand what I'm asking, if you
5  have any doubt in your mind, please ask me to please restate
6  it or whatever so you've got it clear as to what I'm asking.
7  Okay?
8       A.  Yes.
9       Q.  And if you don't indicate that you have a problem
10  with it, I'm going to assume that you understood my question.
11      A.  Okay.
12      Q.  And if I ask you a question that can be answered
13  yes or no, please answer it yes or no. And then, if it
14  requires an explanation, you can. But if it's something that
15  should be answered yes or no, please do so.
16      A.  Okay.
17      Q.  Is that fair?
18      A.  Yes.
19      Q.  All right. What's your age?
20      A.  Thirty-one.
21      Q.  And how long have you been a policeman?
22      A.  Just over five years.
23      Q.  And prior to that time, what did you do?
24      A.  Restaurant manager.
25      Q.  Where?

7

1       A.  A restaurant in Boca Raton, Florida.
2       Q.  And are you married?
3       A.  No.
4       Q.  When did you move down here?
5       A.  Just prior to becoming an officer with Key West.
6       Q.  Okay.
7       A.  Just over five years ago.
8       Q.  And what's your rank?
9       A.  Patrol officer.
10      Q.  Do you know whether any officers on the Key West
11  Police Department have their own personal like, stun guns,
12  the ones that you can buy in the gun shops?
13          MR. GILL: Object to the form of the question.
14          MR. REYNOLDS: Join.
15          MR. GILL: You can answer if you can.
16      A.  Not that I'm aware of, no.
17      Q.  You've never seen anybody carrying one?
18      A.  No.
19      Q.  Okay. There was a Taser video that came out of
20  Officer Lovette's Taser. Are you aware of that?
21      A.  I have not heard or seen any of Officer Lovette's
22  Taser video or audio.
23      Q.  Okay. Have you heard about it?
24      A.  Just speculation, what other people have said, but
25  that's about it.

8

1       Q.  Okay. Have you talked to any officers of the Key
2  West Police Department with regard to Officer Lovette's Taser
3  video and audio?
4       A.  No.
5       Q.  Have you talked with anybody about Officer
6  Lovette's Taser video and audio?
7       A.  No.
8       Q.  In that video and audio, he states, quote, "We're
9  going to have to do supplements. Let's" -- I'm sorry. Exact
10  words, quote. "We're all going to have to get" -- let me try
11  again.
12          Quote, "We're all going to have to do supplements.
13  Let's get together and work that shit out," closed quote.
14  Are you aware of him having ever said that?
15          MR. GILL: Object to the form of the question.
16          MR. REYNOLDS: Objection, form.
17      A.  No.
18      Q.  Did he say anything like that to you?
19      A.  Not that I'm aware of, no.
20      Q.  Would you remember if he came to you and said, hey,
21  listen, we've got to do supplements, let's get together and
22  do them together so that they're all together?
23      A.  Probably.
24          MR. REYNOLDS: Objection, form.
25          MR. GILL: Join.

9

```
 1        Q.  Probably?
 2        A.  Probably, yes.  If he had said something to me like
 3   that, --
 4        Q.  You'd remember it?
 5        A.  -- I might remember it, yes.
 6        Q.  But you -- but you don't remember him saying
 7   anything like that to you?
 8        A.  No.
 9        Q.  Okay.  He also says on that video:  I've gotten
10   about a million texts as to what happened.  And then he says,
11   this is a direct quote, "Gabe killed him," closed quote.
12             Are you aware that that's on his video --
13        MR. GILL:  Object to --
14        MR. REYNOLDS:  Objection, form.
15        MR. GILL:  Join.
16   BY MR. DAVID PAUL HORAN:
17        Q.  -- or on his audio?
18        MR. GILL:  Join.
19        MR. REYNOLDS:  Join.
20        A.  No.
21        Q.  Do you know of anything that would refute that
22   statement?
23        MR. GILL:  Object.
24        MR. REYNOLDS:  Objection, form.
25        MR. GILL:  Join.
```

10

```
 1        A.  No.
 2        Q.  Also on his video, it says, and this is Officer
 3   Lovette talking about Mr. Eimers, quote, "He has blunt force
 4   trauma on the head from me," closed quote.
 5             Did you ever hear anybody make that statement?
 6        MR. GILL:  Object to the form of the question.
 7        MR. REYNOLDS:  Join.
 8        A.  No.
 9        Q.  Do you remember anybody ever saying that he died of
10   blunt force trauma?
11        MR. GILL:  Object to the form of the question.
12        MR. REYNOLDS:  Join.
13        A.  No.
14        Q.  Do you remember anybody having said that he died
15   because he was Tased?
16        MR. GILL:  Object to the form of the question.
17        MR. REYNOLDS:  Join.
18        A.  No.
19        Q.  I'm going to hand you Exhibit Number 13 and ask if
20   you have seen that.
21             (Plaintiff's Exhibit 13 was marked.)
22        A.  Yes.
23        Q.  Okay.  When's the last time you read it or saw it?
24        A.  Prior to this deposition.
25        Q.  Today?
```

11

```
 1        A.  Yes.
 2        Q.  Okay.  Did you bring a copy with you?
 3        A.  No, I do not.  I left it in the car.
 4        Q.  Did it have any markings on it?
 5        A.  No.  Mine was my copy of it from --
 6        Q.  Okay.  But you hadn't put any markings on it?
 7        A.  No.
 8        Q.  So it's identical to what you're looking at?
 9        A.  Other than this sticker, yes.
10        Q.  Okay.  What's the date that it was actually, when
11   you did your supplemental on that case?
12        A.  This date is dated as December 3rd, 2013.
13        Q.  Okay.  And that's a supplemental narrative,
14   correct?
15        A.  Yes.
16        Q.  Okay.  Why did you do that?
17        MR. GILL:  I'm just going to instruct the witness
18   that any communications you had between you and your
19   attorney, either me or through the PBA, are privileged,
20   so don't disclose the contents of the communications.
21        THE WITNESS:  Okay.
22        A.  We were instructed to, by our attorney, to write
23   these report -- we were instructed by our attorneys with the
24   PBA to do the supplemental at the request and at the order of
25   the department.
```

12

```
 1        Q.  Okay.  Now, this purports to be a supplemental
 2   narrative, correct?
 3        A.  Yes.
 4        Q.  What is it supplementing?
 5        A.  The original case from the incident that I believe
 6   was initiated by Officer Celcer.
 7        Q.  Okay.  Had you read Officer Celcer's narrative
 8   before you supplemented it?
 9        A.  No, I did not.
10        Q.  Then how do you know what you were supplementing?
11        MR. GILL:  Object to the form of the question.
12        MR. REYNOLDS:  Join.
13        A.  My supplemental has only information that I did and
14   that I'm aware of.
15        Q.  When you got your order from your commanding
16   officer, did he order that you put down all the individuals
17   you remember at the scene?
18        A.  No.
19        Q.  What did he order?
20        A.  Just that we write a supplemental as to what
21   happened and what your involvement was.
22        Q.  Only your involvement?
23        A.  Yes.
24        Q.  Now, since you've read it today and you have it
25   there in front of you, is all of that correct?
```

3  (Pages 9 to 12)

13

1      MR. REYNOLDS:  Objection, form.
2      MR. GILL:  Join.
3   A.  Yes.
4   Q.  Is it all in your own words?
5   A.  Yes.
6   Q.  Now, did you prepare it?
7   A.  Yes.  I wrote --
8   Q.  Are you the typist?
9   A.  No.
10  Q.  How did you prepare it?  How did you get it
11  printed?
12  A.  Typed it up in our computer system that we have for
13  our report managers and printed it out from there.
14  Q.  And you typed it?
15  A.  I typed it in my computer, yes.
16  Q.  In your computer or in --
17  A.  My department-owned computer, yes.
18  Q.  Okay.  Where is that located?
19  A.  My patrol vehicle.
20  Q.  Oh, it's in your patrol vehicle?
21  A.  Uh-huh.
22  Q.  Okay.  When you typed it up, then did you send it
23  in to the Key West Police Department?
24  A.  Yes.
25  Q.  Is it under a particular file?  Did you have a

14

1   certain file name for that supplemental narrative?
2   A.  No.  The narrative was typed up in the actual
3   report manager itself, not the program specifically.  Once I
4   completed my supplemental, it was sent to the patrol -- the
5   sergeant's box and the supervisor's box for them to review.
6   Q.  Okay.  On your computer in your patrol car, do you
7   put it into a file?
8   A.  No.  Everything was in that one program.  There's
9   not a specific file in Windows or a file folder that it goes
10  to.
11  Q.  Okay.  So all of those words on that supplemental
12  narrative are your own?
13  A.  Yes.
14  Q.  Look at the first paragraph.
15  A.  Okay.
16  Q.  And those are your words, correct?
17  A.  They were what we were instructed to write.
18  Q.  By whom?
19  A.  Our attorneys.
20  Q.  Okay.  Did your commanding officer tell you to put
21  that paragraph in there?
22  A.  I do not remember if they said specifically, but I
23  know I was instructed by my attorney to put that paragraph.
24  Q.  Okay.  Did he hand you something?
25      MR. GILL:  Again, you can answer the question to

15

1   the extent you don't disclose specifically what your
2   attorney was telling you.
3   A.  My attorney told me to specifically put this
4   information into my supplemental report with my actual
5   incident and with my supplemental information.
6   Q.  Okay.  Did he give you a pre-typed thing that has
7   those words so that you could type it in?
8   A.  Yes.
9   Q.  Okay.  And then you typed it in?
10  A.  Yes.
11  Q.  Okay.  Did Officer Lovette help you prepare your
12  supplemental narrative?
13  A.  No, he did not.
14      MR. REYNOLDS:  Objection, form.
15      MR. GILL:  Join.
16      THE WITNESS:  No.
17  Q.  In no way, shape or form did he help you prepare
18  it; is that correct?
19  A.  Correct.
20      MR. REYNOLDS:  Objection, form.
21  Q.  Did anyone suggest any of the wording in the second
22  paragraph that's Exhibit Number -- is it 13?
23  A.  Yes, 13.
24  Q.  Exhibit Number 13, in that second paragraph, did
25  anybody suggest any of the wording to you?

16

1   A.  Not that I remember, no.
2   Q.  Okay.  You state that at 8:20 a.m. on Thanksgiving,
3   November 28, that you were on patrol; is that correct?  Is
4   that what it says?
5   A.  Yes.
6   Q.  Okay.  How did you come up with 8:20?
7   A.  I believe that was the time listed in my -- our CAD
8   call as when we were put on the call or when the call
9   initiated.
10  Q.  On the CAD call?
11  A.  I believe so, yes.
12  Q.  Okay.  So you reviewed the CAD calls?
13  A.  Yes.
14  Q.  To prepare this?
15  A.  Yes.
16  Q.  Oh, okay.  Did you review any of the other CAD
17  calls?
18  A.  No.
19  Q.  So the only time you used the CAD call was to come
20  up with the 8:20 a.m. on Thanksgiving, November 28th; is that
21  correct?
22  A.  Yes.
23  Q.  And that's the only thing you used it for?
24  A.  Yes.
25  Q.  Did you review any of the other CAD calls that were

17

1  listed when you reviewed and came up with this 8:20 a.m.?
2      A.  No.
3      Q.  And would that have been on the day that it was
4  prepared?
5      A.  The 8:20 would be on the day of November 28.
6      Q.  Okay.
7      A.  The day of the incident.
8      Q.  But when you reviewed the CAD calls, that would be
9  on what date?
10     A.  The exact date, I do not know.  It would probably
11  have been done when I wrote the report on December 3rd.
12     Q.  All right.
13     A.  When I was writing my report, I would have pulled
14  up what my times were.
15     Q.  Okay.  And what time on December 3rd?
16     A.  According to the printout here, the incident
17  heading, this date was -- Date Report, this date was prepared
18  on December 3rd, 2013, at 10:19.
19     Q.  Okay.  Had you talked to anybody prior to doing
20  that, that suggested any of the wording in the second
21  paragraph?
22     MR. GILL:  Object to the form.
23     MR. REYNOLDS:  Join.
24     A.  No.
25     Q.  So from the time you got that 8:20 a.m. call to

18

1  when you arrived at the Southernmost Beach Cafe, how long did
2  that take?
3      A.  I don't have specific times on here.  I do not know
4  the exact time.  I could tell you within minutes.
5      Q.  How could you tell me?
6      A.  Just based on everything that was happening, I know
7  it was a fluid-going call.  Several minutes after --
8      Q.  Several.
9      A.  Several minutes after.
10     Q.  More than ten, less than ten?
11     A.  Probably less than ten.
12     Q.  Okay.  And how did you get to the Southernmost
13  Beach Cafe?
14     A.  Drove in my patrol car.
15     Q.  Along what streets?
16     A.  Inbound on Truman Avenue to Simonton Street.  Once
17  I got to Simonton Street, I believe I made a left and was
18  heading southbound on Simonton.  I run parallel to Duval
19  Street.
20     Q.  Uh-huh.
21     A.  Took Simonton Street down to South Street.  South,
22  made a right heading inbound to the -- one block over to
23  Duval and south to where the Southernmost Beach Cafe is
24  located.
25     Q.  Okay.  When you pulled up, that would have been on

19

1  South Duval, correct?
2      A.  Yes.
3      Q.  And you would have been on South Duval, south of
4  the intersection of Duval and South Street, correct?
5      A.  Yes.
6      Q.  How many police cars were in front of you when you
7  pulled up?
8      A.  I do not remember.
9      Q.  Were there more than one?
10     A.  I do not know.
11     Q.  Were you the first one at the scene?
12     A.  No, I was not.
13     Q.  Were there any other police cars there?
14     A.  I know there was at least one car in front of me.
15     Q.  Okay.  Did you consult the dispatcher log when you
16  were setting up your time line?
17     A.  Only to pull up here, I believe, the 8:20, when I
18  started responding to the call.
19     Q.  And that would have been on the 3rd, correct, the
20  3rd of December?
21     A.  Yes, when I wrote this supplemental report.
22     Q.  Okay.  So approximately what time was it when you
23  got out of your car at the beach cafe?
24     A.  Do not know.  Sometime after 8:20 a.m.
25     Q.  Okay.  You say within ten minutes of that?

20

1      A.  I would assume so, yes.
2      Q.  Okay.  So when you got out of your car, which way
3  did you walk?
4      A.  South.
5      Q.  Were you on the street or were you on the sidewalk?
6      A.  Initially, I was on the street, walking, and then I
7  crossed over onto the sidewalk, and then onto the beach area
8  by the Southernmost Beach Cafe.
9      Q.  Okay.  Let's go through what you observed when you
10  first got there.  You were facing south with your car,
11  correct?
12     A.  Yes.
13     Q.  Was your ICOP on?
14     A.  I believe so.
15     Q.  Did you receive an order to turn it on from
16  dispatch?
17     A.  Not from dispatch, no.
18     Q.  Who did you get the order to turn it on from?
19     A.  I believe it was our supervisor at the time,
20  advised over our communications radio, make sure everyone was
21  recording.
22     Q.  Okay.  And who was your supervisor at the time?
23     A.  At that time, it was Sergeant -- Sergeant Zamora.
24     Q.  Okay.  Have you ever reviewed your ICOP?
25     A.  No, I have not.

5  (Pages 17 to 20)

21

1    Q.  Did you turn your ICOP over to the sergeant?
2    A.  I do not have ICOP, I have a COBAN system in my
3    vehicle.
4    Q.  Uh-huh.
5    A.  And all that is done electronically via wifi and on
6    the City servers.
7    Q.  So it's always on and recording into the City
8    servers; is that correct?
9        MR. GILL:  Object to the form of the question.
10       MR. REYNOLDS:  Objection, form.
11   A.  To my understanding.
12   Q.  Okay.  So you don't have to --
13   A.  It's supposed to be.
14   Q.  You don't have to download it or send it.  It just,
15   the COBAN actually transmits it to the City servers, correct?
16       MR. GILL:  Object to the form of the question.
17   A.  Yes.  When it is within an area that it will
18   transmit.  Example is the police department, it will
19   automatically connect to the wifi network and is supposed to
20   download from our in-car to the department server.
21   Q.  And it does it automatically?
22       MR. GILL:  Object to the form of the question.
23   A.  Yes.
24   Q.  Okay.  So you walked first down Duval Street south.
25   Then you curved across, across the sidewalk and onto the

22

1    beach area; is that correct?
2    A.  Yes.
3    Q.  How many officers were within ten feet of Mr.
4    Eimers when you first saw Mr. Eimers?
5    A.  Do not know.
6    Q.  Do you know of any officers that were within ten
7    feet of Mr. Eimers when you got onto the beach area?
8    A.  There were officers with Mr. Eimers on the beach.
9    Who and how many, I do not know.
10   Q.  You don't?
11   A.  No.
12   Q.  Do you know Officer Lovette?
13   A.  Yes, I work with him.
14   Q.  Was he there?
15   A.  I know at one point, he was there, yes.
16   Q.  What about Gabe?
17   A.  Officer Garrido, yes, he was there at some point.
18   Q.  Okay.  At some point.
19       Was he there when you got there?
20   A.  I do not know or recall.
21   Q.  Was Mr. Eimers there?
22   A.  Yes, I remember seeing him.
23   Q.  Okay.  Do you remember who was actually touching
24   Mr. Eimers when you first arrived?
25       MR. GILL:  Object to the form of the question.

23

1    A.  No.
2    Q.  Was anybody touching Mr. Eimers when you first
3    arrived?
4    A.  I don't remember who was physically interacting
5    with Mr. Eimers upon my arrival.
6    Q.  Do you remember my question?
7    A.  Yes.
8    Q.  Was anyone touching Mr. Eimers when you first
9    arrived?
10       MR. REYNOLDS:  Objection, form.
11       MR. GILL:  Join.
12       MR. REYNOLDS:  Asked and answered.
13   BY MR. DAVID PAUL HORAN:
14   Q.  Yes or no.
15   A.  Do not recall, no.  Do not know.
16   Q.  So you don't know that anybody was touching him?
17   A.  Do not know or recall.
18   Q.  Did you make any kind of initial report to anyone
19   prior to December 3rd?
20   A.  No.
21   Q.  And so, in doing your supplemental report, you'd
22   never reviewed the original report that you were
23   supplementing; is that correct?
24       MR. REYNOLDS:  Objection, form.
25       MR. GILL:  Join.

24

1    A.  Correct.
2    Q.  Was anybody with you on December 3rd when you
3    prepared your supplemental narrative?
4        MR. REYNOLDS:  Objection, form.
5        MR. GILL:  Join.
6    A.  No.
7    Q.  Let's get back to you getting out of your car and
8    walking out onto the beach.
9        When you first saw Mr. Eimers, where were his
10   hands?
11   A.  I do not remember or recall where his hands were.
12   Q.  What was he doing?
13   A.  Do not remember.
14   Q.  You don't -- do you, could you see his hands?
15   A.  Can't tell you.  Don't know.
16   Q.  Officer Garrido; do you know where he was when you
17   first saw him?
18   A.  No, I do not.
19   Q.  Was he standing?
20       MR. REYNOLDS:  Objection, form.
21       MR. GILL:  Join.
22   A.  Can't tell you.  Don't know.
23   Q.  Have you always been this forgetful?
24       MR. REYNOLDS:  Objection, form.
25       MR. GILL:  Join.

6 (Pages 21 to 24)

25

1    MR. REYNOLDS:  Move to strike.
2    BY MR. DAVID PAUL HORAN:
3         Q.  You're under oath.
4         A.  I'm well aware of that.
5         MR. REYNOLDS:  Same objection.
6         Q.  And you don't remember where Mr. Garrido was when
7    you first saw him?
8         A.  Nope.
9         MR. REYNOLDS:  Objection, form.
10        Q.  And you don't remember whether he was kneeling or
11   standing?
12        A.  Nope.
13        Q.  What about Officer Lovette, was he kneeling or
14   standing when you first saw him?
15        A.  Do not remember.  Do not know.
16        Q.  Have you ever been diagnosed with short-term memory
17   problems?
18        MR. REYNOLDS:  Objection, form, move to strike.
19        A.  Nope.
20        Q.  Do you remember any officers being on the
21   restaurant side of Mr. Eimers' body?
22        A.  I don't remember where anyone was positioned.
23        Q.  Do you remember any officers being on the
24   restaurant side of Mr. Eimers' body?  That's a yes or no, you
25   can explain it.

26

1         MR. REYNOLDS:  Objection, form.
2         MR. GILL:  Join.
3         A.  No.
4         Q.  Do you remember any officers being on the left side
5    of Mr. Eimers' body which would be toward Duval Street?
6         MR. GILL:  Object to the form of the question.
7         A.  I don't know where officers were positioned.  I
8    know that there were officers there, because I obviously
9    relieved somebody.
10        Q.  Okay.
11        A.  But who was positioned where, I do not know.
12        Q.  I'm not asking you who.  I said, were you aware of
13   any officers on the left-hand side of Mr. Eimers' body when
14   you were there?
15        MR. REYNOLDS:  Objection, form.
16        MR. GILL:  Join.
17        A.  Do not know specifically as to where they were
18   positioned, no.
19        Q.  Did you actually approach Mr. Eimers?
20        A.  Yes.
21        Q.  What side of his body did you approach from?
22        A.  I came from his left side, the roadway.
23        Q.  Okay.  When you got to Mr. Eimers, what officer was
24   beside you, either on your left or right?
25        A.  Do not know.

27

1         Q.  So when you got to Mr. Eimers, what did you do to
2    him?
3         MR. GILL:  Object to the form of the question.
4         MR. REYNOLDS:  Objection, form.
5         A.  When I arrived on scene, officers were interacting
6    with Mr. Eimers.  I noticed that Mr. Eimers was dirty and not
7    very clean, at that point, and I also noticed officers did
8    not have any gloves or any equipment or personal protective
9    equipment on.
10        At that point, I put gloves on and relieved, I
11   believe it was, Officer Calvert, Thaddeus Calvert, who was
12   controlling Mr. Eimers' legs from kicking, because he did not
13   have any gloves or anything like that on.
14        Q.  Okay.  How many officers had gloves on other than
15   you?
16        MR. GILL:  Object to the form of the question.
17        A.  I don't know who else put gloves on or who had
18   gloves on.
19        Q.  So what exactly did you do with regard to Mr.
20   Eimers once you got there?
21        A.  Once I arrived on scene and once I actually started
22   interacting with Mr. Eimers, I relieved Officer Thaddeus
23   Calvert, who did not have gloves on, who was controlling Mr.
24   Eimers' legs from kicking up.  I put my gloves on, relieved
25   him, and controlled Mr. Eimers' legs from kicking back up at

28

1    any officers.
2         Q.  Okay.  So you were at his feet, correct?
3         A.  Yes.
4         Q.  Were you kneeling?
5         A.  I'm not sure how I was down, if I was bent over,
6    kneeling.  I don't remember.
7         Q.  Was Officer Calvert, when you relieved him, was he
8    kneeling or standing?
9         A.  I don't know if he was kneeling, bent over or
10   standing.  I just know he was controlling his legs.
11        Q.  Okay.  Were there officers on Mr. Eimers' left arm?
12        A.  I do not know who was at or who was there, if there
13   was anyone.
14        Q.  Were there officers?  I didn't ask you who.
15        Were there officers on his left arm?
16        A.  Do not know.
17        Q.  Were there any officers on his right arm?
18        A.  Do not know.
19        Q.  So how were they keeping him down if all you're
20   doing is controlling his legs?
21        MR. REYNOLDS:  Objection, form.
22        MR. GILL:  Join.
23        A.  Wasn't looking at his arms or upper body.  Was
24   concerned with his legs from kicking.
25        Q.  Okay.  Did you ever touch Mr. Eimers' head?

7  (Pages 25 to 28)

29

1    A.  No.
2    Q.  Did you ever touch his neck?
3    A.  No.
4    Q.  Did you ever touch his back?
5    A.  No.
6    Q.  Did you ever touch his arms?
7    A.  When I took him out of handcuffs.
8    Q.  When you took him out of handcuffs.
9        You're the one that took him out?
10   A.  Myself and I believe it was Sergeant Zamora took
11   him out of the handcuffs.  So I touched his hands and his,
12   probably his arm area, to get the handcuff and actually get
13   the key in and then unlock it.
14   Q.  What was Mr. Eimers' position relative to the sand
15   when you did that?
16   A.  At that point, he was sitting up.
17   Q.  Sitting up?
18   A.  Or was leaned up.  Yes, sitting up.
19   Q.  Okay.  On his butt?
20   A.  Yes.
21   Q.  Okay.  And was he struggling?
22   A.  No.
23   Q.  Were his legs hobbled?
24   A.  No.
25   Q.  Did his legs ever get hobbled?

30

1    A.  No.  We had started to and were unable to or had
2    stopped.
3    Q.  Why were you unable to?
4    A.  We weren't unable, we stopped.
5    Q.  Why?
6    A.  We decided to stand Mr. Eimers up and try to walk
7    him over to the patrol vehicle and secure him inside a
8    vehicle and off the beach.
9    Q.  Was he still -- was he still struggling?
10   A.  When we were trying to put the hobble on, yes.
11   Q.  Before you got the hobble on, did you -- did he
12   stop struggling?
13   A.  He -- I don't remember when he stopped struggling.
14   Q.  Do you remember one of the officers saying, hey, he
15   stopped breathing, he stopped breathing?
16   A.  Somebody announced that was not responding.  At
17   that point is when we rolled Mr. Eimers over and myself and
18   Sergeant Zamora began taking the handcuffs off.
19   Q.  Okay.  So when you say you rolled him over, at the
20   time that you went to roll him over, what was his position
21   with regard to the sand?
22   A.  He was initially proned out on the sand.
23   Q.  Face down?
24   A.  I'm not sure if his face was down, but his stomach
25   was in -- was on the sand.

31

1    Q.  Did you see any sand on his face?
2    A.  No.
3    Q.  Ever?
4    A.  No.
5    Q.  Did you ever see his face?
6    A.  Yes.
7    Q.  Did you see any sand in his eyes?
8    A.  No.
9    Q.  Nose?
10   A.  No.
11   Q.  Mouth?
12   A.  No.
13   Q.  Any blood?
14   A.  No.  Not that I recall.
15   Q.  Did you ever see any officer that had blood on his
16   hands?
17   A.  No.
18   Q.  Are you aware that he was bleeding from his left
19   ear?
20       MR. REYNOLDS:  Objection, form.
21   A.  No.
22   Q.  When you were holding his legs to get the hobble
23   on, is that when you heard somebody say, he's not breathing?
24       MR. REYNOLDS:  Objection, form.
25       MR. GILL:  Join.

32

1    A.  At some point, it was said.  Was I still holding
2    his legs?  I don't remember if I was still holding his legs,
3    if we were still trying to get the hobble on him or when it
4    was said.
5    Q.  So when you were holding Mr. Eimers' legs, was that
6    when he became unresponsive?
7        MR. GILL:  Object to the form of the question.
8        MR. REYNOLDS:  Join.
9    A.  I don't know when Mr. Eimers became unresponsive.
10   Q.  How about reviewing your statement.
11   A.  Okay.
12   Q.  Does it say anything about when he became
13   unresponsive?
14       MR. REYNOLDS:  Objection, form.
15       MR. GILL:  Join.
16   A.  According to this, it says, "As the subject was
17   being lifted, he became unresponsive."
18   Q.  Is that your memory today, that it was only when he
19   was being lifted that he became unresponsive?
20       MR. REYNOLDS:  Objection, form.
21       MR. GILL:  Join.
22   A.  That's when I'm aware of it.
23   Q.  Okay.  And those were your words, correct?
24   A.  What, this report?  Yes.
25   Q.  Yeah.

8 (Pages 29 to 32)

33

```
 1        A.  Uh-huh.
 2        Q.  And you didn't consult with anybody about it?
 3        A.  No.
 4        Q.  You said, we were trying to control his legs and
 5   put the hobble on; who's "we"?
 6        A.  When did I say "we"?
 7        Q.  In your testimony just a little while ago.
 8        MR. REYNOLDS:  Objection, form.
 9        MR. GILL:  Join.
10   BY MR. DAVID PAUL HORAN:
11        Q.  I'm not saying your supplement.  I'm saying what
12   you just testified.
13        A.  I'm -- I'm just looking to make sure.
14        Q.  Okay.
15        A.  Okay.
16        Q.  Do you remember the question?
17        A.  No.  Can you ask it again?
18        (Above-pending question was read.)
19        THE WITNESS:  Me and another officer.  What
20   officer, I do not know who was actually assisting with
21   me, but I know it was not me just -- there was multiple
22   officers out there.
23        Q.  Okay.  Who was it that you relieved because he
24   wasn't wearing gloves?  That's your prior testimony.
25        A.  That was Officer Thaddeus Calvert.
```

34

```
 1        Q.  And was he helping you with regard to the hobble?
 2        A.  I do not remember.
 3        Q.  When you relieved him, where was he?
 4        A.  I do not know where he went.
 5        Q.  Was he next to you or up towards the head of Mr.
 6   Eimers?
 7        MR. REYNOLDS:  Objection, form.
 8        MR. GILL:  Join.
 9        A.  No idea where another officer went or positioned
10   himself.
11        Q.  But you said you relieved him; isn't that correct?
12        A.  Yes.
13        Q.  Where did you relieve him from?
14        MR. REYNOLDS:  Objection, form, asked and answered.
15        A.  The right, right side of Mr. Eimers' legs.
16        Q.  Thank you.  Is your memory coming back?
17        MR. REYNOLDS:  Objection, form.  Move to strike
18   inappropriate comment of counsel and this --
19        A.  My memory's been fine.
20        MR. REYNOLDS:  -- witness has already testified.
21        MR. GILL:  He answered that way before.
22        MR. DAVID PAUL HORAN:  That's a legitimate
23   question, Counsel.
24        MR. GILL:  It's not.
25        Q.  Do you remember conducting an interview with
```

35

```
 1   Captain Smith's wife, Kathy Smith, on February 20th, 2014?
 2        A.  Don't remember the date, but I remember conducting
 3   an interview with her.
 4        Q.  Okay.  Did you have any help with your interview
 5   with Ms. Smith?
 6        A.  No.
 7        Q.  Did you receive any help from anyone during your
 8   February 20th interview?
 9        MR. GILL:  Object to the form of the question.
10        MR. REYNOLDS:  Join.
11        A.  Help with what?
12        Q.  With your testimony to Kathy Smith?
13        A.  No.
14        Q.  Was it under oath?
15        A.  Yes.
16        Q.  Have you reviewed it?
17        A.  Yes.
18        Q.  Is it correct?
19        MR. GILL:  Objection.
20        MR. REYNOLDS:  Objection, form.
21        MR. GILL:  Join.
22        A.  Yes.
23        Q.  Is it factual?
24        MR. REYNOLDS:  Same objection.
25        MR. GILL:  Join.
```

36

```
 1        A.  Yes.
 2        Q.  Did you see anyone attempting to sit Mr. Eimers up?
 3        MR. GILL:  Object to the form of the question.
 4        A.  No.
 5        Q.  When you got there, did you see several officers
 6   attempting to put handcuffs on Mr. Eimers?
 7        A.  Yes.
 8        Q.  Who was performing CPR on Mr. Eimers?
 9        A.  Initially, CPR was started by -- it was Officer
10   Celcer and Officer Henry Del Valle.  And then paramedics
11   arrived on scene and took over.
12        Q.  Okay.  And how were they administering CPR?
13        A.  Chest compressions and a department-provided Ambu
14   bag for breathing.
15        Q.  Were you aware of any weapons being displayed
16   during the time that you arrived on the scene and until Mr.
17   Eimers was transported?
18        MR. GILL:  Object to the form of the question.
19        MR. REYNOLDS:  Join.
20        A.  I did not see weapons displayed at Mr. Eimers or
21   who had a weapon out.  Only weapon I did notice was a AR15
22   was slung over Officer Del Valle's shoulder, was slung down,
23   and I observed that when he was doing chest compressions for
24   Mr. Eimers.
25        Q.  Okay.  Did you ever see the video?
```

9  (Pages 33 to 36)

37

1    A. No.
2    Q. You've never seen the video?
3    MR. REYNOLDS: Objection, form.
4    A. Snippets of it.
5    Q. Snippets of it.
6    A. Of a video that was posted on You-Tube.
7    Q. Oh, okay. Did you see the You-Tube video?
8    A. Yeah. Just clips of it, just those little pieces.
9    Q. Okay. Did you see anybody with an AR15 pointing at
10   Mr. Eimers?
11   A. Not that I noticed or was looking for. That video
12   is from far back. I can't tell what's going on.
13   Q. What were you looking for when you saw the video?
14   A. Honestly, not looking for anything. Just saw it
15   because it was there and said Key West Police.
16   Q. The narrative given to Kathy Smith on the 20th of
17   February states, quote, "Officer Galbo, along with several
18   other officers, attempted to place the hobble on the suspect,
19   but were unable to fully secure the device when the officers
20   noted that the suspect was unresponsive." Is that correct?
21   MR. GILL: Object to the form of the question.
22   MR. REYNOLDS: Join.
23   A. Yes.
24   Q. Okay. And so, when you noted that he was
25   unresponsive, what was the position of Mr. Eimers?

38

1    A. I do not recall. I have it here that I recalled,
2    according to my report, when he was being lifted, he became
3    unresponsive.
4    Q. Okay. So were they trying to lift him when he
5    became unresponsive or was it when you were trying to put the
6    hobble on him that he became unresponsive?
7    MR. GILL: Object to form.
8    MR. REYNOLDS: Objection, form.
9    A. I honestly do not know.
10   Q. Do you see that there's some inconsistency between
11   trying to lift him and also put a hobble on?
12   MR. GILL: Object --
13   MR. REYNOLDS: Objection, form.
14   MR. GILL: Join.
15   A. A lot of it's happening simultaneously.
16   Q. Simultaneously.
17   A. Uh-huh.
18   Q. How do you put a hobble on if somebody's trying to
19   lift somebody?
20   MR. REYNOLDS: Objection, form.
21   MR. GILL: Join.
22   A. Not going to slide something under someone's legs
23   if they're pressed up against or laying on the sand and
24   there's no way to get it under. You're going to have to
25   naturally lift somebody's legs up slightly to put a hobble

39

1    on.
2    Q. Oh, okay. And if you lift the legs up, then the
3    body's still laying prone, on the stomach, on the sand,
4    correct?
5    MR. REYNOLDS: Objection, form.
6    MR. GILL: Join.
7    A. I don't know who was at the body or who was lifting
8    the body or when the body was being lifted or rolled over or
9    moved or set up.
10   Q. That isn't what I asked.
11   MR. GILL: Object to the form of the question.
12   BY MR. DAVID PAUL HORAN:
13   Q. When you are lifting the legs up to put the hobble
14   on, --
15   A. Uh-huh.
16   Q. -- your testimony, --
17   A. Yes.
18   MR. REYNOLDS: Objection, form.
19   Q. -- is the body -- not the legs, but the body --
20   still laying on the sand, stomach down?
21   MR. REYNOLDS: Objection, form.
22   MR. GILL: Join.
23   A. Do not know.
24   Q. You do realize you're under oath, correct?
25   MR. REYNOLDS: Objection, form. Move to strike.

40

1    A. I'm well aware of that.
2    MR. GILL: Join.
3    Q. Huh?
4    A. I'm well aware of that, yes.
5    Q. Okay. And so far, all the testimony you've given
6    in this deposition is true and correct to your own personal
7    knowledge, correct?
8    MR. GILL: Object to the form of the question.
9    A. Yes.
10   Q. Do you know how Mr. Eimers was secured so that his
11   wrists weren't moving so that Garrido's finger could be
12   extracted?
13   MR. REYNOLDS: Objection, form.
14   MR. GILL: Join.
15   A. Do not know.
16   Q. Do you remember Officer Garrido's finger being
17   caught in the handcuff?
18   A. I was not there when that may or may not have
19   happened.
20   Q. So you don't know how Officer Garrido could get Mr.
21   Eimers to hold still while attempting to remove his finger,
22   correct?
23   MR. REYNOLDS: Objection, form.
24   MR. GILL: Join.
25   A. Do not know what Officer Garrido did. You can see

10 (Pages 37 to 40)

41

1   Officer Garrido's report or ask him what he did pertaining to
2   it. I can only attest to what I did.
3       Q. Okay. Did you ever see a Taser in the hands of any
4   officer?
5       MR. REYNOLDS: Objection, form.
6       MR. GILL: Join.
7   A. No.
8       Q. Now, being very conscious of the fact that all of
9   your testimony has been absolutely under oath and true, I'm
10  going to ask you to look at Plaintiff's Exhibit Number 14.
11      This is a supplemental report by Gary Lee Lovette.
12  I want you to look that over and I want you to read it.
13  Before you answer any questions, I want you to read it. Not
14  the first paragraph, because that was all the same on all of
15  them. The second paragraph, I want you to read it.
16      (Plaintiff's Exhibit 14 was marked.)
17  A. Okay.
18      Q. Have you read it?
19  A. Yes.
20      Q. I want you to read the second paragraph of yours,
21  which is Number 13, Exhibit 13. Go ahead and read it.
22  A. Okay.
23      Q. Then I'll ask you a question.
24  A. Okay.
25      Q. Now, you've read your second paragraph on your

42

1   supplemental affidavit. You've read Mr. Lovette's second
2   paragraph on his supplemental. And you have sworn testimony
3   right now, today, that you got no help from Mr. Lovette in
4   preparing your supplemental narrative.
5       My question to you is this: Do you want to change
6   your sworn testimony?
7   A. No.
8       MR. REYNOLDS: Objection, form.
9       Q. You don't?
10  A. Nope.
11      Q. So it's a total coincidence between that paragraph
12  and that paragraph, that they have exactly the same
13  punctuation, exactly the same wording, and it's just a
14  coincidence, right?
15      MR. GILL: Object to the form of the question.
16      MR. REYNOLDS: Objection, form.
17      MR. GILL: Argumentative.
18      MR. DAVID PAUL HORAN: It's argumentative. It's
19  also very determinative as to the validity of your
20  testimony.
21      MR. REYNOLDS: Objection, form.
22      MR. GILL: Objection.
23      MR. REYNOLDS: Move to strike comment of counsel.
24  BY MR. DAVID PAUL HORAN:
25      Q. You're telling me is that a coincidence? Is it a

43

1   coincidence --
2       MR. GILL: Counsel.
3   BY MR. DAVID PAUL HORAN:
4       Q. -- that they're the same?
5       MR. GILL: Counsel.
6       MR. REYNOLDS: Objection, form, asked and answered.
7       MR. DAVID PAUL HORAN: Go ahead and make your
8   objection.
9       MR. GILL: You need to get yourself under control,
10  Counsel.
11      MR. DAVID PAUL HORAN: I'm under control. I just
12  don't like people lying to me.
13      MR. REYNOLDS: Objection, form. Move to strike --
14      MR. GILL: Move to strike.
15      MR. REYNOLDS: -- inappropriate comment of counsel.
16      MR. DAVID PAUL HORAN: Okay. Well, we'll let the
17  judge and let the jury decide whether there's such a
18  remarkable similarity between the two that it's
19  absolutely humanly impossible to duplicate those
20  paragraphs without having consulted with each other.
21      MR. REYNOLDS: Objection, move to strike
22  inappropriate comment of counsel.
23      MR. GILL: Join.
24  BY MR. DAVID PAUL HORAN:
25      Q. Now then, are you going to tell me that the

44

1   similarity between those two paragraphs is a coincidence?
2       MR. REYNOLDS: Objection, form, asked and answered.
3       MR. GILL: Join.
4   BY MR. DAVID PAUL HORAN:
5       Q. It's yes or no.
6   A. Are you going to not yell at me?
7       Q. No, I'm --
8   A. And speak to me like --
9       Q. Oh, okay.
10  A. Okay.
11      Q. I'll do it real slow, Georgia style.
12      There's two paragraphs there. You've read them
13  both.
14  A. Yes, I have.
15      Q. Are they remarkably similar?
16      MR. GILL: Object to the form.
17      MR. REYNOLDS: Objection, form.
18      MR. GILL: Join.
19  A. Officer Lovette was my training officer. Most of
20  my reports and how I write reports were based on how Officer
21  Lovette wrote his reports.
22      Q. And you got no help from Officer Lovette in writing
23  your report, correct?
24  A. That is correct.
25      MR. REYNOLDS: Objection, form.

45

1    MR. GILL:  Join.
2        Q.  Do you know whether Officer Lovette used your
3    report to write his?
4        MR. GILL:  Object to the form.
5        MR. REYNOLDS:  Objection, form.
6        MR. GILL:  Join.
7        A.  I cannot attest to what Officer Lovette did or how
8    he wrote his report.
9        Q.  What's the date on Officer Lovette's?  Upper right-
10   hand corner.
11       A.  His is on December 2nd.
12       Q.  And yours is on?
13       A.  December 3rd.
14       Q.  So it would be pretty hard for him to use yours,
15   wouldn't it?
16       MR. GILL:  Object to the --
17       MR. REYNOLDS:  Objection, form.
18       MR. GILL:  Join.
19       A.  Okay.
20       Q.  How about reading the last sentence of both of
21   them.  First, your last sentence.  Read it out loud.
22       A.  "First aid/CPR was administered, as well as the use
23   of an AED until fire fighters and paramedics arrived on scene
24   and transported the subject to Lower Keys Medical Center."
25       Q.  And would you read the last sentence in Mr.

46

1    Lovette's?
2        A.  "First aid/CPR was administered, as well as the use
3    of an AED until fire fighters and paramedics arrived on scene
4    and transported the subject to Lower Keys Medical Center."
5        Q.  When you talk about somebody being in the prone
6    position, how do you state it in your supplemental report?
7        MR. REYNOLDS:  Objection, form.
8        MR. GILL:  Join.
9        A.  "When I arrived on scene, the subject was proned
10   out on the sand."
11       Q.  How's proned spelled?
12       A.  P-r-o-n-e-d.
13       Q.  Okay.  Look at Lovette's.  How is prone spelled?
14       MR. REYNOLDS:  Objection, form.
15       MR. GILL:  Join.
16   BY MR. DAVID PAUL HORAN:
17       Q.  It appears at the exact same place.
18       MR. REYNOLDS:  Objection, form.
19       A.  P-r-o-n-e-d.  Okay.
20       Q.  So it's just a -- is it a coincidence that you
21   misspelled the same word?
22       MR. REYNOLDS:  Objection, form.
23       MR. GILL:  Join.
24       A.  Yes.
25       Q.  Have you ever read any of the reports taken at the

47

1    scene from independent witnesses?
2        A.  No.
3        Q.  In one of the reports, there is a lady named Joell
4    Grassy and she says, "I saw a Taser being displayed and
5    pushed against the right side of the subject's neck."
6        Do you have any way of refuting that statement?
7        MR. GILL:  Object to --
8        MR. REYNOLDS:  Objection, form.
9        MR. GILL:  Join.
10       A.  I don't even know who that person is or have any
11   idea what they're talking about.
12       Q.  I didn't ask you who they were.  I said, she -- her
13   statement to the police department was this.  She, "saw a
14   Taser being displayed and pushed against the right side of
15   the subject's neck."
16       My question is, do you have any way to refute that
17   statement?
18       MR. REYNOLDS:  Objection, form.
19       MR. GILL:  Join.
20       A.  No.
21       Q.  Then there is an interview with Mr. Barrow, he's an
22   independent witness to this, taken that day.  It says, quote,
23   "He saw something with which an officer was hitting him,"
24   meaning Mr. Eimers, "in the chest and pushed against his
25   chest."

48

1    Do you have any way of refuting that statement?
2        MR. GILL:  Object to the form of the question.
3        MR. REYNOLDS:  Join.
4        A.  No.
5        Q.  Then it says, "He said a diner at the restaurant,
6    who claimed to be a voluntary police officer from New York,
7    exclaimed they were Tasing excessively."
8        Do you have any way of refuting that statement?
9        MR. GILL:  Object to --
10       MR. REYNOLDS:  Objection, form.
11       MR. GILL:  Join.
12       A.  No.
13       MR. DAVID PAUL HORAN:  No further questions.
14       MR. REYNOLDS:  No questions.
15       MR. GILL:  I have no questions for the witness.  We
16   will read and take a copy if it's ordered.
17       THE VIDEOGRAPHER:  Off the video record at 11:29
18   a.m.
19       (The deposition was concluded at 10:08 a.m.)

49

## CERTIFICATE OF OATH

STATE OF FLORIDA )
COUNTY OF MONROE )

    I, Suzanne F. Ex, Certified Verbatim Reporter, Florida Professional Reporter, Notary Public, State of Florida, certify that NICHOLAS GALBO personally appeared before me on the 7th day of November, 2014, and was duly sworn.

    Signed this 15th day of November, 2014.

_____
Suzanne F. Ex, CVR-M, FPR
Notary Public, State of Florida
Commission No.:  FF015913
Commission Expires:  July 27, 2017

---

50

## CERTIFICATE OF REPORTER

STATE OF FLORIDA )
COUNTY OF MONROE )

    I, Suzanne Ex, Certified Verbatim Reporter and Florida Professional Reporter, certify that I was authorized to and did report the deposition of NICHOLAS GALBO, pages 1 through 48; that the review of the transcript was requested; and that the transcript is a true record.

    I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

    Dated this 15th day of November, 2014.

_____
Suzanne Ex, CVR-M, FPR
Certified Verbatim Reporter-Master
Florida Professional Reporter

---

51

### WITNESS NOTIFICATION LETTER

November 17, 2014

Nicholas Galbo
c/o Michael T. Burke, Esquire
Johnson Anselmo Murdoch Burke Piper & Hochman, P.A.
2488 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida  33304

RE:  Treavor Eimers vs. City of Key West, et al.
    Deposition Taken November 7, 2014
    U.S. Legal Support Job No. 1186154

The transcript of the above-referenced proceeding has been prepared and is being provided to your office for review by the witness.

We respectfully request that the witness complete their review within 30 days and return the errata sheet to our office.

Sincerely,

_____
Suzanne F. Ex, CVR-M, FPR
U.S. Legal Support, Inc.
One Southeast Third Avenue, Suite 1250
Miami, Florida  33131
(305) 373-8404

CC via transcript:

David W. Brill, Esquire
Jeannete C. Lewis, Esquire
Robert J. McKee, Esquire
David Paul Horan, Esquire
Darren M. Horan, Esquire
Lyman H. Reynolds, Jr., Esquire

---

52

### ERRATA SHEET

DO NOT WRITE ON THE TRANSCRIPT ~ ENTER CHANGES ON THIS PAGE

IN RE:  Treavor Eimers vs. City of Key West, et al.
Nicholas Galbo
November 7, 2014

| Page No. | Line No. | Change | Reason |
|----------|----------|--------|--------|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

_____
Date       Nicholas Galbo

13  (Pages 49 to 52)

**A**

**a.m** 1:15,15  4:7
16:2,20  17:1,25
19:24  48:18,19
**Above-pending**
33:18
**above-referenced**
51:10
**absolutely** 41:9
43:19
**action** 50:15,16
**actual** 14:2  15:4
**address** 5:10
**administered** 45:22
46:2
**administering**
36:12
**advised** 20:20
**AED** 45:23  46:3
**affidavit** 42:1
**affirm** 4:24
**age** 6:19
**ago** 6:1  7:7  33:7
**ahead** 41:21  43:7
**aid/CPR** 45:22  46:2
**al** 1:8  4:10  51:7
52:4
**amazing** 5:13
**Ambu** 36:13
**announced** 30:16
**Anselmo** 2:12  51:5
**answer** 6:13  7:15
14:25  41:13
**answered** 6:12,15
23:12  34:14,21
43:6  44:2
**anybody** 7:17  8:5
10:5,9,14  15:25
17:19  23:2,16
24:2  33:2  37:9
**appearance** 4:14
**APPEARANCES** 2:1
**appeared** 49:8
**appears** 46:17
**approach** 26:19,21
**approximately**
19:22
**AR15** 36:21  37:9
**area** 20:7  21:17
22:1,7  29:12
**argumentative**
42:17,18
**arm** 28:11,15,17
29:12
**arms** 28:23  29:6
**arrival** 23:5
**arrived** 18:1  22:24

23:3,9  27:5,21
36:11,16  45:23
46:3,9
**asked** 23:12  34:14
39:10  43:6  44:2
**asking** 6:4,6  26:12
**assisting** 33:20
**assume** 6:10  20:1
**attempted** 37:18
**attempting** 36:2,6
40:21
**attest** 41:2  45:7
**attorney** 5:23,24
11:19,22  14:23
15:2,3  50:13
**attorneys** 5:22
11:23  14:19
50:14
**audio** 7:22  8:3,6,8
9:17
**authorized** 50:7
**automatically**
21:19,21
**Avenue** 18:16  51:18
**aware** 7:16,20  8:14
8:19  9:12  12:14
25:4  26:12  31:18
32:22  36:15  40:1
40:4

**B**

**back** 24:7  27:25
29:4  34:16  37:12
**bag** 36:14
**Barrow** 47:21
**based** 18:6  44:20
**beach** 2:17  18:1,13
18:23  19:23  20:7
20:8  22:1,7,8
24:8  30:8
**becoming** 7:5
**BEDARD** 2:16
**began** 30:18
**behalf** 2:2,11,16
4:18,21
**believe** 12:5  16:7
16:11  18:17
19:17  20:14,19
27:11  29:10
**bent** 28:5,9
**bleeding** 31:18
**block** 18:22
**blood** 31:13,15
**blunt** 10:3,10
**Bob** 4:17
**Boca** 7:1
**body** 25:21,24  26:5

26:13,21  28:23
39:7,8,8,19,19
**body's** 39:3
**Boulevard** 2:8,12
5:12  51:5
**box** 14:5,5
**breathing** 30:15,15
31:23  36:14
**Brill** 51:22
**bring** 11:2
**Building** 2:17
**Burke** 2:12  51:4,5
**burke@jambg.com**
2:14
**business** 5:10
**butt** 29:19
**buy** 7:12

**C**

**C** 2:14  51:23
**C-101** 2:17
**c/o** 51:4
**CAD** 16:7,10,12,16
16:19,25  17:8
**cafe** 18:1,13,23
19:23  20:8
**call** 16:8,8,8,10
16:19  17:25  18:7
19:18
**calls** 16:12,17,25
17:8
**Calvert** 27:11,11
27:23  28:7  33:25
**Captain** 35:1
**car** 11:3  14:6
18:14  19:14,23
20:2,10  24:7
**carrying** 7:17
**cars** 19:6,13
**case** 1:3  4:9  5:18
11:11  12:5
**caught** 40:17
**cause** 4:3,25
**CC** 51:21
**Celcer** 12:6  36:10
**Celcer's** 12:7
**Center** 45:24  46:4
**certain** 14:1
**Certificate** 3:6,7
49:1  50:1
**Certified** 1:24  4:1
49:6  50:6,22
**certify** 49:8  50:7
50:12
**change** 42:5  52:7
**CHANGES** 52:2
**Charles** 1:5

**chest** 36:13,23
47:24,25
**City** 1:8  4:10,19
21:6,7,15  51:7
52:4
**CIV** 4:10
**claimed** 48:6
**clean** 27:7
**clear** 6:6
**clips** 37:8
**closed** 8:13  9:11
10:4
**COBAN** 21:2,15
**coincidence** 42:11
42:14,25  43:1
44:1  46:20
**Columbia** 2:17
**come** 16:6,19
**coming** 34:16
**commanding** 12:15
14:20
**comment** 34:18
42:23  43:15,22
**Commission** 49:15
49:16
**communications**
11:18,20  20:20
**complete** 51:12
**completed** 14:4
**compressions** 36:13
36:23
**computer** 13:12,15
13:16,17  14:6
**concerned** 28:24
**concluded** 48:19
**conducting** 34:25
35:2
**connect** 21:19
**connected** 50:15
**conscious** 41:8
**consult** 19:15  33:2
**consulted** 43:20
**contents** 11:20
**control** 33:4  43:9
43:11
**controlled** 27:25
**controlling** 27:12
27:23  28:10,20
**copy** 11:2,5  48:16
**corner** 45:10
**correct** 11:14  12:2
12:25  14:14
15:18,19  16:3,21
19:1,4,19  20:11
21:8,15  22:1
23:23  24:1  28:2
32:23  34:11

35:18 37:20 39:4
39:24 40:6,7,22
44:23,24
**counsel** 4:14 34:18
34:23 42:23 43:2
43:5,10,15,22
50:13,15
**COUNTY** 49:4 50:4
**court** 1:1 4:5,11
4:11,23
**CPR** 36:8,9,12
**crossed** 20:7
**curved** 21:25
**CVR-M** 1:23 49:14
50:21 51:17

**D**

**Darren** 2:6 4:16
51:24
**darren@horan-w...**
2:5
**date** 11:10,12 17:9
17:10,17,17,17
35:2 45:9 52:25
**dated** 11:12 50:18
**David** 2:5 3:3 4:16
4:16 5:8 9:16
23:13 25:2 33:10
34:22 39:12
42:18,24 43:3,7
43:11,16,24 44:4
46:16 48:13
51:22,24
**day** 17:3,5,7 47:22
49:9,11 50:18
**days** 51:13
**Deceased** 1:5
**December** 11:12
17:11,15,18
19:20 23:19 24:2
45:11,13
**decide** 43:17
**decided** 30:6
**declare** 52:22
**Defendant** 2:16
**Defendants** 1:9
2:11
**defender** 5:22
**Del** 36:10,22
**department** 7:11
8:2 11:25 13:23
21:18,20 47:13
**department-owned**
13:17
**department-pro...**
36:13
**deposition** 1:13

3:3 4:1,9 5:15
10:24 40:6 48:19
50:8 51:8
**depositions** 5:18
**determinative**
42:19
**device** 37:19
**diagnosed** 25:16
**died** 10:9,14
**diner** 48:5
**direct** 3:3 5:7
9:11
**dirty** 27:6
**disclose** 11:20
15:1
**dispatch** 20:16,17
**dispatcher** 19:15
**displayed** 36:15,20
47:4,14
**District** 1:1,1
4:11,11
**DIVISION** 1:2
**document** 52:23
**doing** 17:19 23:21
24:12 28:20
36:23
**doubt** 6:5
**download** 21:14,20
**dphoran@horan-...**
2:5
**Drive** 2:17
**Drove** 18:14
**duly** 5:5 49:9
**duplicate** 43:19
**Duval** 18:18,23
19:1,3,4 21:24
26:5

**E**

**ear** 31:19
**East** 2:12 51:5
**Eimers** 1:5,5 4:10
4:17 10:3 22:4,4
22:7,8,21,24
23:2,5,8 24:9
25:21,24 26:5,13
26:19,23 27:1,6
27:6,12,20,22,24
27:25 28:11,25
29:14 30:6,17
32:5,9 34:6,15
36:2,6,8,17,20
36:24 37:10,25
40:10,21 47:24
51:7 52:4
**either** 11:19 26:24
**electronically**

21:5
**employee** 50:13,14
**ENTER** 52:2
**equipment** 27:8,9
**errata** 3:8 51:13
52:1
**Esquire** 2:5,6,10
2:14,19 51:4,22
51:23,23,24,24
51:25
**Estate** 1:5
**et** 1:8 4:10 51:7
52:4
**Ex** 1:23 4:1,12
49:6,14 50:6,21
51:17
**exact** 5:20 8:9
17:10 18:4 46:17
**exactly** 27:19
42:12,13
**Examination** 1:20
3:3 5:7
**examined** 5:5
**Example** 21:18
**exception** 4:20
**excessively** 48:7
**exclaimed** 48:7
**Exhibit** 10:19,21
15:22,24 41:10
41:16,21
**EXHIBITS** 3:11
**Expires** 49:16
**explain** 25:25
**explanation** 6:14
**extent** 15:1
**extracted** 40:12
**eyes** 31:7

**F**

**F** 49:6,14
**face** 30:23,24 31:1
31:5
**facing** 20:10
**fact** 41:8
**facts** 52:23
**factual** 35:23
**fair** 6:17
**fairly** 6:3
**far** 37:12 40:5
**Fax** 2:4,13,18
**February** 35:1,8
37:17
**feet** 22:3,7 28:2
**FF015913** 49:15
**fighters** 45:23
46:3
**file** 13:25 14:1,7

14:9,9
**financially** 50:15
**find** 5:14
**fine** 34:19
**finger** 40:11,16,21
**fire** 45:23 46:3
**first** 5:5 14:14
19:11 20:10
21:24 22:4,24
23:2,8 24:9,17
25:7,14 41:14
45:21,22 46:2
**five** 6:22 7:7
**Florida** 1:1,8,17
1:25 2:4,8,13,17
4:2,3,11 5:12
7:1 49:3,7,8,15
50:3,7,22 51:6
51:19
**fluid-going** 18:7
**folder** 14:9
**follows** 5:6
**force** 10:3,10
**foregoing** 52:23
**forgetful** 24:23
**form** 7:13 8:15,16
8:24 9:14,24
10:6,11,16 12:11
13:1 15:14,17,20
17:22 21:9,10,16
21:22 22:25
23:10,24 24:4,20
24:24 25:9,18
26:1,6,15 27:3,4
27:16 28:21
31:20,24 32:7,14
32:20 33:8 34:7
34:14,17 35:9,20
36:3,18 37:3,21
38:7,8,13,20
39:5,11,18,21,25
40:8,13,23 41:5
42:8,15,16,21
43:6,13 44:2,16
44:17,25 45:4,5
45:17 46:7,14,18
46:22 47:8,18
48:2,10
**Fort** 2:13 51:6
**FPR** 1:23 49:14
50:21 51:17
**Friday** 1:15 4:6
**front** 12:25 19:6
19:14
**fully** 37:19
**further** 48:13
50:12

### G

Gabe 9:11 22:16
Galbo 1:13 3:3,13
  4:9,18 5:4,9,11
  37:17 49:8 50:8
  51:4 52:4,25
Garrido 22:17
  24:16 25:6 40:20
  40:25
Garrido's 40:11,16
  41:1
Gary 2:16 41:11
Georgia 6:4 44:11
getting 24:7
Gill 2:14 4:18,18
  7:13,15 8:15,25
  9:13,15,18,23,25
  10:6,11,16 11:17
  12:11 13:2 14:25
  15:15 17:22 21:9
  21:16,22 22:25
  23:11,25 24:5,21
  24:25 26:2,6,16
  27:3,16 28:22
  31:25 32:7,15,21
  33:9 34:8,21
  35:9,19,21,25
  36:3,18 37:21
  38:7,12,14,21
  39:6,11,22 40:2
  40:8,14,24 41:6
  42:15,17,22 43:2
  43:5,9,14,23
  44:3,16,18 45:1
  45:4,6,16,18
  46:8,15,23 47:7
  47:9,19 48:2,9
  48:11,15
give 15:6
given 37:16 40:5
giving 4:25
gloves 27:8,10,13
  27:14,17,18,23
  27:24 33:24
go 20:9 41:21 43:7
goes 14:9
going 6:10 8:9,10
  8:12 10:19 11:17
  37:12 38:22,24
  41:10 43:25 44:6
Good 4:5
gotten 9:9
Grassy 47:4
GROUP 2:7
gun 7:12
guns 7:11

### H

H 2:19 51:25
hand 4:24 10:19
  14:24 45:10
handcuff 29:12
  40:17
handcuffs 29:7,8
  29:11 30:18 36:6
hands 24:10,11,14
  29:11 31:16 41:3
happened 9:10
  12:21 40:19
happening 18:6
  38:15
hard 45:14
head 10:4 28:25
  34:5
heading 17:17
  18:18,22
hear 10:5
heard 7:21,23
  31:23
help 15:11,17 35:4
  35:7,11 42:3
  44:22
helping 34:1
Henry 36:10
hey 8:20 30:14
hgill@jambg.com
  2:14
Higgins 1:16 2:3
  4:8
hitting 47:23
hobble 30:10,11
  31:22 32:3 33:5
  34:1 37:18 38:6
  38:11,18,25
  39:13
hobbled 29:23,25
Hochman 2:12 51:5
hold 40:21
holding 31:22 32:1
  32:2,5
honestly 37:14
  38:9
Horan 1:16 2:3,6
  3:3 4:7,16,16,17
  5:8 9:16 23:13
  25:2 33:10 34:22
  39:12 42:18,24
  43:3,7,11,16,24
  44:4 46:16 48:13
  51:24,24
HORRAN 2:5
How's 46:11
Hudson 2:14 4:18
Huh 40:3

humanly 43:19

### I

ICOP 20:13,24 21:1
  21:2
idea 34:9 47:11
identical 11:8
impossible 43:19
in-car 21:20
inappropriate
  34:18 43:15,22
inbound 18:16,22
incident 3:13,13
  12:5 15:5 17:7
  17:16
inconsistency
  38:10
independent 47:1
  47:22
INDEX 3:1,11
indicate 6:9
individual 4:19
individuals 12:16
information 12:13
  15:4,5
initial 23:18
initially 20:6
  30:22 36:9
initiated 12:6
  16:9
inside 30:7
instruct 11:17
instructed 11:22
  11:23 14:17,23
interacting 23:4
  27:5,22
interested 50:16
intersection 19:4
interview 34:25
  35:3,4,8 47:21
involvement 12:21
  12:22

### J

J 2:10 51:23
Jeannete 51:23
Job 51:8
Joell 47:3
Johnson 2:12 51:5
Join 7:14 8:25
  9:15,18,19,25
  10:7,12,17 12:12
  13:2 15:15 17:23
  23:11,25 24:5,21
  24:25 26:2,16
  28:22 31:25 32:8
  32:15,21 33:9

34:8 35:10,21,25
  36:19 37:22
  38:14,21 39:6,22
  40:2,14,24 41:6
  43:23 44:3,18
  45:1,6,18 46:8
  46:15,23 47:9,19
  48:3,11
Jr 2:19 51:25
judge 43:17
July 49:16
jury 43:17

### K

Kathy 35:1,12
  37:16
keeping 28:19
key 1:2,8,17 2:4
  4:10,19 5:12 7:5
  7:10 8:1 13:23
  29:13 37:15 51:7
  52:4
Keys 45:24 46:4
kicking 27:12,24
  27:25 28:24
killed 9:11
kind 23:18
kneeling 25:10,13
  28:4,6,8,9
know 5:20 7:10
  9:21 12:10 14:23
  17:10 18:3,6
  19:10,14,24 22:5
  22:6,9,12,15,20
  23:15,16,17
  24:15,16,22
  25:15 26:7,8,11
  26:17,25 27:17
  28:9,10,12,16,18
  32:9 33:20,21
  34:4 38:9 39:7
  39:23 40:10,15
  40:20,25 45:2
  47:10
knowledge 40:7
KWPD 3:13,13

### L

lady 47:3
Large 4:3
Lauderdale 2:13
  51:6
Law 1:16 2:7 4:7
laying 38:23 39:3
  39:20
leaned 29:18
Lee 2:16 41:11

**left** 11:3 18:17
26:4,22,24 28:11
28:15 31:18
**left-hand** 26:13
**Legal** 2:21 4:13
51:8,18
**legitimate** 34:22
**legs** 27:12,24,25
28:10,20,24
29:23,25 31:22
32:2,2,5 33:4
34:15 38:22,25
39:2,13,19
**let's** 8:9,13,21
20:9 24:7
**Letter** 3:7 51:1
**Lewis** 51:23
**lift** 38:4,11,19,25
39:2
**lifted** 32:17,19
38:2 39:8
**lifting** 39:7,13
**line** 19:16 52:7
**listed** 16:7 17:1
**listen** 8:21
**little** 33:7 37:8
**live** 5:13
**LLC** 2:7
**LLP** 1:16 2:3
**located** 13:18
18:24
**log** 19:15
**long** 6:1,21 18:1
**look** 14:14 41:10
41:12 46:13
**looking** 11:8 28:23
33:13 37:11,13
37:14
**lot** 38:15
**loud** 45:21
**Lovette** 2:16 3:13
4:20,22 10:3
15:11 22:12
25:13 41:11 42:3
44:19,21,22 45:2
45:7
**Lovette's** 7:20,21
8:2,6 42:1 45:9
46:1,13
**Lower** 45:24 46:4
**lreynolds@rrbp...**
2:18
**lying** 43:12
**Lyman** 2:19 4:21
51:25

**M**

**M** 2:6 51:24
**manager** 6:24 14:3
**managers** 13:13
**marked** 10:21 41:16
**markings** 11:4,6
**married** 7:2
**McKee** 2:7,10 4:17
51:23
**meaning** 47:24
**Medical** 45:24 46:4
**memory** 25:16 32:18
34:16
**memory's** 34:19
**Miami** 51:19
**Michael** 51:4
**million** 9:10
**mind** 6:5
**Mine** 11:5
**minutes** 18:4,7,9
19:25
**misspelled** 46:21
**MONROE** 49:4 50:4
**morning** 4:5
**Mouth** 31:11
**move** 7:4 25:1,18
34:17 39:25
42:23 43:13,14
43:21
**moved** 39:9
**moving** 40:11
**multiple** 33:21
**municipality** 1:8
**Murdoch** 2:12 51:5

**N**

**name** 5:9,25 14:1
**named** 47:3
**narrative** 11:13
12:2,7 14:1,2,12
15:12 24:3 37:16
42:4
**naturally** 38:25
**neck** 29:2 47:5,15
**need** 5:14 43:9
**network** 21:19
**never** 7:17 23:22
37:2
**New** 48:6
**Nicholas** 1:13 3:3
4:9 5:4,11 49:8
50:8 51:4 52:4
52:25
**Nope** 25:8,12,19
42:10
**North** 5:11
**Nose** 31:9
**Notary** 4:2 49:7,15

**noted** 37:20,24
**notice** 36:21
**noticed** 27:6,7
37:11
**NOTIFICATION** 51:1
**November** 1:15 4:6
16:3,20 17:5
49:9,11 50:18
51:2,8 52:5
**number** 4:9 5:20
10:19 15:22,24
41:10,21

**O**

**oath** 3:6 25:3
35:14 39:24 41:9
49:1
**Object** 7:13 8:15
9:13,23 10:6,11
10:16 12:11
17:22 21:9,16,22
22:25 26:6 27:3
27:16 32:7 35:9
36:3,18 37:21
38:7,12 39:11
40:8 42:15 44:16
45:4,16 47:7
48:2,9
**objection** 8:16,24
9:14,24 13:1
15:14,20 21:10
23:10,24 24:4,20
24:24 25:5,9,18
26:1,15 27:4
28:21 31:20,24
32:14,20 33:8
34:7,14,17 35:19
35:20,24 37:3
38:8,13,20 39:5
39:18,21,25
40:13,23 41:5
42:8,16,21,22
43:6,8,13,21
44:2,17,25 45:5
45:17 46:7,14,18
46:22 47:8,18
48:10
**observed** 20:9
36:23
**obviously** 26:8
**office** 1:16 4:7
51:10,13
**officer** 4:18,20,21
5:9,11 7:5,9,20
7:21 8:2,5 10:2
12:6,7,16 14:20
15:11 22:12,17

24:16 25:13
26:23 27:11,22
28:7 31:15 33:19
33:20,25 34:9
36:9,10,22 37:17
40:16,20,25 41:1
41:4 44:19,19,20
44:22 45:2,7,9
47:23 48:6
**officers** 4:19 7:10
8:1 22:3,6,8
25:20,23 26:4,7
26:8,13 27:5,7
27:14 28:1,11,14
28:15,17 30:14
33:22 36:5 37:18
37:19
**Oh** 13:20 16:16
37:7 39:2 44:9
**okay** 6:7,11,16 7:6
7:19,23 8:1 9:9
10:23 11:2,6,10
11:13,16,21 12:1
12:7 13:18,22
14:6,11,15,20,24
15:6,9,11 16:2,6
16:12,16 17:6,15
17:19 18:12,25
19:15,22,25 20:2
20:9,22,24 21:12
21:24 22:18,23
26:10,23 27:14
28:2,11,25 29:19
29:21 30:19
32:11,23 33:14
33:15,23 35:4
36:12,25 37:7,9
37:24 38:4 39:2
40:5 41:3,17,22
41:24 43:16 44:9
44:10 45:19
46:13,19
**once** 14:3 18:16
27:20,21,21
**ones** 7:12
**oo0oo** 2:23
**order** 11:24 12:15
12:16,19 20:15
20:18
**ordered** 48:16
**original** 12:5
23:22

**P**

**P-r-o-n-e-d** 46:12
46:19
**P.A** 2:12 51:5

**Page** 3:1,11 52:2,7
**pages** 50:8
**Palm** 2:8,17
**paragraph** 14:14,21
    14:23 15:22,24
    17:21 41:14,15
    41:20,25 42:2,11
    42:12
**paragraphs** 43:20
    44:1,12
**parallel** 18:18
**paramedics** 36:10
    45:23 46:3
**particular** 13:25
**parties** 50:13,14
**patrol** 7:9 13:19
    13:20 14:4,6
    16:3 18:14 30:7
**Paul** 2:5 3:3 4:16
    4:16 5:8 9:16
    23:13 25:2 33:10
    34:22 39:12
    42:18,24 43:3,7
    43:11,16,24 44:4
    46:16 48:13
    51:24
**PBA** 11:19,24
**penalties** 52:22
**people** 7:24 43:12
**performing** 36:8
**perjury** 52:22
**person** 47:10
**personal** 1:5 7:11
    27:8 40:6
**personally** 49:8
**pertaining** 41:1
**physically** 23:4
**pieces** 37:8
**Piper** 2:12 51:5
**place** 5:13 37:18
    46:17
**Plaintiff** 1:6 2:2
    4:17
**Plaintiff's** 3:11
    10:21 41:10,16
**please** 4:14,24 5:9
    6:5,5,13,15
**PLLC** 2:16
**point** 22:15,17,18
    27:7,10 29:16
    30:17 32:1
**pointing** 37:9
**police** 7:11 8:2
    13:23 19:6,13
    21:18 37:15
    47:13 48:6
**policeman** 6:21

**position** 29:14
    30:20 37:25 46:6
**positioned** 25:22
    26:7,11,18 34:9
**posted** 37:6
**Pratt** 2:21 4:13
**pre-typed** 15:6
**prepare** 13:6,10
    15:11,17 16:14
**prepared** 17:4,17
    24:3 51:10
**preparing** 42:4
**Present** 2:21
**pressed** 38:23
**pretty** 45:14
**printed** 13:11,13
**printout** 17:16
**prior** 6:23 7:5
    10:24 17:19
    23:19 33:24
**private** 5:22,24
**privileged** 11:19
**probably** 8:23 9:1
    9:2 17:10 18:11
    29:12
**problem** 6:9
**problems** 25:17
**proceeding** 51:10
**PROCEEDINGS** 3:1
**Professional** 1:25
    4:2 49:7 50:7,22
**program** 14:3,8
**prone** 39:3 46:5,13
**proned** 30:22 46:9
    46:11
**protective** 27:8
**provided** 51:10
**Public** 4:2 5:22
    49:7,15
**pull** 19:17
**pulled** 17:13 18:25
    19:7
**punctuation** 42:13
**purports** 12:1
**purpose** 4:8
**pushed** 47:5,14,24
**put** 11:6 12:16
    14:7,20,23 15:3
    16:8 27:10,17,24
    30:10 33:5 36:6
    38:5,11,18,25
    39:13

---

**Q**

**question** 6:10,12
    7:13 8:15 10:6
    10:11,16 12:11

14:25 21:9,16,22
    22:25 23:6 26:6
    27:3,16 32:7
    33:16,18 34:23
    35:9 36:3,18
    37:21 39:11 40:8
    41:23 42:5,15
    47:16 48:2
**questions** 41:13
    48:13,14,15
**quote** 8:8,10,12,13
    9:11,11 10:3,4
    37:17 47:22

---

**R**

**radio** 20:20
**raise** 4:23
**rank** 7:8
**Raton** 7:1
**read** 3:7 10:23
    12:7,24 33:18
    41:12,13,15,18
    41:20,21,25 42:1
    44:12 45:21,25
    46:25 48:16
    52:22
**reading** 45:20
**real** 44:11
**realize** 39:24
**Reason** 52:7
**recall** 5:25 22:20
    23:15,17 24:11
    31:14 38:1
**recalled** 38:1
**receive** 20:15 35:7
**record** 4:6,15
    48:17 50:10
**recording** 20:21
    21:7
**refute** 9:21 47:16
**refuting** 47:6 48:1
    48:8
**regard** 8:2 27:19
    30:21 34:1
**relative** 29:14
    50:12,14
**relieve** 34:13
**relieved** 26:9
    27:10,22,24 28:7
    33:23 34:3,11
**remarkable** 43:18
**remarkably** 44:15
**remember** 8:20 9:4
    9:5,6 10:9,14
    12:17 14:22 16:1
    19:8 22:22,23
    23:4,6 24:11,13

25:6,10,15,20,22
    25:23 26:4 28:6
    30:13,14 32:2
    33:16 34:2,25
    35:2,2 40:16
**remove** 40:21
**report** 3:13,13
    11:23 13:13 14:3
    15:4 17:11,13,17
    19:21 23:18,21
    23:22 32:24 38:2
    41:1,11 44:23
    45:3,8 46:6 50:8
**reporter** 1:24,25
    3:7 4:2,2,5,12
    4:23 49:6,7 50:1
    50:6,7,22
**Reporter-Master**
    50:22
**reports** 44:20,20
    44:21 46:25 47:3
**Representative** 1:5
**request** 11:24
    51:12
**requested** 50:9
**requires** 6:14
**respectfully** 51:12
**responding** 19:18
    30:16
**restate** 6:5
**restaurant** 6:24
    7:1 25:21,24
    48:5
**return** 51:13
**review** 14:5 16:16
    16:25 50:9 51:10
    51:13
**reviewed** 16:12
    17:1,8 20:24
    23:22 35:16
**reviewing** 32:10
**Reynolds** 2:16,19
    4:21,21 7:14
    8:16,24 9:14,19
    9:24 10:7,12,17
    12:12 13:1 15:14
    15:20 17:23
    21:10 23:10,12
    23:24 24:4,20,24
    25:1,5,9,18 26:1
    26:15 27:4 28:21
    31:20,24 32:8,14
    32:20 33:8 34:7
    34:14,17,20,24
    35:10,20,24
    36:19 37:3,22
    38:8,13,20 39:5

39:18,21,25
40:13,23 41:5
42:8,16,21,23
43:6,13,15,21
44:2,17,25 45:5
45:17 46:7,14,18
46:22 47:8,18
48:3,10,14 51:25
**right** 4:23 6:19
17:12 18:22
26:24 28:17
34:15,15 42:3,14
45:9 47:5,14
**rmckee@themcke...**
2:9
**roadway** 26:22
**Robert** 2:10 51:23
**ROBERTS** 2:16
**Roderick** 2:21 4:12
**roll** 30:20
**rolled** 30:17,19
39:8
**Roosevelt** 5:11
**Royal** 2:8
**run** 18:18

**S**

**sand** 29:14 30:21
30:22,25 31:1,7
38:23 39:3,20
46:10
**saw** 10:23 22:4
24:9,17 25:7,14
37:13,14 47:4,13
47:23
**saying** 9:6 10:9
30:14 33:11,11
**says** 9:9,10 10:2
16:4 32:16 47:4
47:22 48:5
**scene** 12:17 19:11
27:5,21 36:11,16
45:23 46:3,9
47:1
**second** 15:21,24
17:20 41:15,20
41:25 42:1
**secure** 30:7 37:19
**secured** 40:10
**see** 24:14 31:1,5,7
31:15 36:2,5,20
36:25 37:7,9
38:10 40:25 41:3
**seeing** 22:22
**seen** 7:17,21 10:20
37:2
**send** 13:22 21:14

**sent** 14:4
**sentence** 45:20,21
45:25
**sergeant** 20:23,23
21:1 29:10 30:18
**sergeant's** 14:5
**server** 21:20
**servers** 21:6,8,15
**set** 39:9
**setting** 19:16
**shape** 15:17
**sheet** 3:8 51:13
52:1
**shit** 8:13
**shops** 7:12
**short-term** 25:16
**shoulder** 36:17
**side** 25:21,24 26:4
26:13,21,22
34:15 47:5,14
**sidewalk** 20:5,7
21:25
**Signed** 49:11
**similar** 44:15
**similarity** 43:18
44:1
**Simonton** 18:16,17
18:18,21
**simultaneously**
38:15,16
**Sincerely** 51:15
**sit** 36:2
**sitting** 29:16,17
29:18
**slide** 38:22
**slightly** 38:25
**slow** 6:3 44:11
**slung** 36:22,22
**Smith** 35:1,5,12
37:16
**Smith's** 35:1
**Snippets** 37:4,5
**somebody** 26:9
30:16 31:23
38:19 46:5
**somebody's** 38:18
38:25
**someone's** 38:22
**sorry** 8:9
**south** 18:21,21,23
19:1,3,3,4 20:4
20:10 21:24
**southbound** 18:18
**Southeast** 51:18
**Southern** 1:1 4:11
**Southernmost** 18:1
18:12,23 20:8

**speak** 44:8
**specific** 14:9 18:3
**specifically** 14:3
14:22 15:1,3
26:17
**speculation** 7:24
**spelled** 46:11,13
**stand** 30:6
**standing** 24:19
25:11,14 28:8,10
**started** 19:18
27:21 30:1 36:9
**state** 4:3,14 5:9
5:22 16:2 46:6
49:3,7,15 50:3
**stated** 52:23
**statement** 9:22
10:5 32:10 47:6
47:13,17 48:1,8
**states** 1:1 8:8
37:17
**sticker** 11:9
**stomach** 30:24 39:3
39:20
**stop** 30:12
**stopped** 30:2,4,13
30:15,15
**street** 1:16 2:3
18:16,17,19,21
18:21 19:4 20:5
20:6 21:24 26:5
**streets** 18:15
**strike** 25:1,18
34:17 39:25
42:23 43:13,14
43:21
**struggling** 29:21
30:9,12,13
**stun** 7:11
**style** 44:11
**subject** 32:16
45:24 46:4,9
**subject's** 47:5,15
**suggest** 15:21,25
**suggested** 17:20
**Suite** 2:8,12 51:5
51:18
**Sunrise** 2:12 51:5
**supervisor** 20:19
20:22
**supervisor's** 14:5
**supplement** 33:11
**supplemental** 11:11
11:13,24 12:1,13
12:20 14:1,4,11
15:4,5,12 19:21
23:21 24:3 41:11

42:1,2,4 46:6
**supplemented** 12:8
**supplementing** 12:4
12:10 23:23
**supplements** 8:9,12
8:21
**Support** 4:13 51:8
51:18
**supposed** 21:13,19
**sure** 20:20 28:5
30:24 33:13
**suspect** 37:18,20
**Suzanne** 1:23 4:1
4:12 49:6,14
50:6,21 51:17
**swear** 4:15,24
**sworn** 5:5 42:2,6
49:10
**system** 13:12 21:2

**T**

**T** 51:4
**take** 18:2 48:16
**taken** 1:20 4:1
5:15 46:25 47:22
51:8
**talk** 6:3 46:5
**talked** 8:1,5 17:19
**talking** 10:3 47:11
**Tased** 10:15
**Taser** 7:19,20,22
8:2,6 41:3 47:4
47:14
**Tasing** 48:7
**tell** 14:20 18:4,5
24:15,22 37:12
43:25
**telling** 15:2 42:25
**ten** 18:10,10,11
19:25 22:3,6
**tend** 6:3
**testified** 5:5
33:12 34:20
**testimony** 4:24
33:7,24 35:12
39:16 40:5 41:9
42:2,6,20
**texts** 9:10
**Thaddeus** 27:11,22
33:25
**Thank** 34:16
**Thanksgiving** 16:2
16:20
**thing** 15:6 16:23
**Third** 51:18
**Thirty-one** 6:20
**time** 6:23 10:23

16:7,19 17:15,25
18:4 19:16,22
20:19,22,23
30:20 36:16
**times** 5:19 17:14
18:3
**today** 4:6 10:25
12:24 32:18 42:3
**told** 15:3
**total** 42:11
**touch** 28:25 29:2,4
29:6
**touched** 29:11
**touching** 22:23
23:2,8,16
**training** 44:19
**transcript** 50:9,10
51:10,21 52:2
**transmit** 21:18
**transmits** 21:15
**transported** 36:17
45:24 46:4
**trauma** 10:4,10
**Treavor** 1:5 4:10
51:7 52:4
**true** 40:6 41:9
50:10 52:23
**Truman** 18:16
**truth** 4:25 5:1
**try** 8:10 30:6
**trying** 30:10 32:3
33:4 38:4,5,11
38:18
**turn** 20:15,18 21:1
**TUZZIO** 2:16
**two** 43:18 44:1,12
**type** 15:7
**typed** 13:12,14,15
13:22 14:2 15:9
**typist** 13:8

**U**

**U.S** 4:10,13 51:8
51:18
**Uh-huh** 13:21 18:20
21:4 33:1 38:17
39:15
**unable** 30:1,3,4
37:19
**understand** 6:4
**understanding**
21:11
**understood** 6:10
**UNITED** 1:1
**unlock** 29:13
**unresponsive** 32:6
32:9,13,17,19

37:20,25 38:3,5
38:6
**upper** 28:23 45:9
**use** 45:14,22 46:2

**V**

**validity** 42:19
**Valle** 36:10
**Valle's** 36:22
**vehicle** 13:19,20
21:3 30:7,8
**Verbatim** 1:24 4:1
49:6 50:6,22
**video** 1:13 3:3 4:6
4:8 7:19,22 8:3
8:6,8 9:9,12
10:2 36:25 37:2
37:6,7,11,13
48:17
**videographer** 2:21
4:12 48:17
**voluntary** 48:6
**vs** 1:7 4:10 51:7
52:4

**W**

**W** 51:22
**walk** 20:3 30:6
**walked** 21:24
**walking** 20:6 24:8
**Wallace** 1:16 2:3
4:8
**want** 5:14 41:12,12
41:13,15,20 42:5
**wasn't** 28:23 33:24
**way** 15:17 20:2
34:21 38:24 47:6
47:16 48:1,8
**we'll** 43:16
**We're** 4:7 8:8,10
8:12
**we've** 8:21
**weapon** 36:21,21
**weapons** 36:15,20
**wearing** 33:24
**went** 30:20 34:4,9
**weren't** 30:4 40:11
**West** 1:2,8,17 2:4
2:17 4:10,19
5:12 7:5,10 8:2
13:23 37:15 51:7
52:4
**Weston** 2:8
**When's** 10:23
**Whitehead** 1:16 2:3
**wife** 35:1
**wifi** 21:5,19

**Windows** 14:9
**witness** 1:20 4:15
5:2 11:17,21
15:16 33:19
34:20 47:22
48:15 51:1,11,12
**witnesses** 47:1
**word** 46:21
**wording** 15:21,25
17:20 42:13
**words** 8:10 13:4
14:11,16 15:7
32:23
**work** 8:13 22:13
**wouldn't** 45:15
**wrists** 40:11
**write** 11:22 12:20
14:17 44:20 45:3
52:2
**writing** 17:13
44:22
**wrote** 13:7 17:11
19:21 44:21 45:8

**X**

**Y**

**Yeah** 32:25 37:8
**year** 6:2
**years** 6:22 7:7
**yell** 44:6
**York** 48:6
**You-Tube** 37:6,7

**Z**

**Zamora** 20:23 29:10
30:18

**0**

**1**

**1** 2:8 50:8
**10** 3:13
**10:08** 48:19
**10:19** 17:18
**10:34** 1:15 4:7
**1000** 2:12 51:5
**11:29** 1:15 48:17
**1186154** 51:8
**1250** 51:18
**13** 3:13 10:19,21
15:22,23,24
41:21,21
**14** 3:13 41:10,16
**14-10028** 4:9
**14-10028-CIV-M...**
1:3

**15th** 49:11 50:18
**1604** 5:11
**17** 51:2
**17150** 2:8

**2**

**2013** 11:12 17:18
**2014** 1:15 4:6 35:1
49:9,11 50:18
51:2,8 52:5
**2017** 49:16
**20th** 35:1,8 37:16
**217-0150** 2:9
**2455** 2:12
**2488** 51:5
**27** 49:16
**28** 16:3 17:5
**28th** 16:20
**294-4585** 2:4
**294-7822** 2:4
**2nd** 45:11

**3**

**30** 51:13
**305** 2:4,4 51:19
**33040** 1:17 2:4
5:12
**33131** 51:19
**33304** 2:13 51:6
**33327** 2:8
**33409** 2:17
**373-8404** 51:19
**3rd** 11:12 17:11,15
17:18 19:19,20
23:19 24:2 45:13

**4**

**41** 3:13
**463-0100** 2:13
**463-2444** 2:13
**470** 2:17
**48** 50:9
**49** 3:6

**5**

**5** 3:3
**50** 3:7
**51** 3:7
**52** 3:8
**561** 2:18,18

**6**

**608** 1:16 2:3
**688-2343** 2:18
**688-6560** 2:18

**7**

**7** 1:15  51:8  52:5
**7th** 4:6  49:9

---

**8**

**8:20** 16:2,6,20
  17:1,5,25  19:17
  19:24
**888-9877** 2:9

---

**9**

**954** 2:9,9,13,13